1

2

3

4

5

6

7

8
                        UNITED STATES DISTRICT COURT

9
                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10  FORD MOTOR CREDIT COMPANY,

11          Plaintiff,

12      v.                                  NO. CIV. S-04-2344 LKK/JFM

13  MICHAEL DAUGHERTY,

14          Defendant.
    _____/
15  AND RELATED COUNTER-CLAIM AND
    THIRD-PARTY COMPLAINT.
16  _____/

17      Pending before the court is plaintiff's motion to dismiss

18  defendants' counterclaims.[1]  Plaintiff, Ford Motor Credit Co.

19  ("Ford Credit") also moves for a more definite statement as to two

20  of defendants' counterclaims.

21  ////

22  _____

23      [1]  Ford Credit moved to dismiss Michael Daugherty and
    Daugherty Lincoln-Mercury, Inc.'s First Amended Counterclaim.
    Before the motion was heard, the parties stipulated to allow
24  counter-claimants to file a "Second Amended Answer of Michael
    Daugherty and Counterclaim of Michael Daugherty and Daugherty
25  Lincoln-Mercury, Inc. against Ford Motor Credit Company and
    Lincoln-Mercury."  Before the court is Ford Credit's motion to
26  dismiss defendants' second amended counterclaim.

                                    1

1    Plaintiff brings two breach of guaranty claims against
2    defendant, Michael Daugherty, alleging that he entered into a
3    wholesale agreement and a capital loan agreement and promissory
4    note.  Ford Credit maintains that Daugherty induced it to enter
5    into these agreements by promising full payment pursuant to two
6    guaranty agreements, but that Daugherty subsequently breached these
7    guaranty agreements.  Compl. at 2-6.

8        Defendants[2] asserted fourteen affirmative defenses and
9    counterclaimed, alleging twelve causes of action against Ford Motor
10   Credit Co.[3]:  Breach of Contract (1st claim), Breach of Covenant
11   of Good Faith and Fair Dealings (2nd claim), Unfair Business
12   Practices (3rd claim), Interference with Contractual Relations (4th
13   claim), Tortious Interference with Prospective Business Advantage
14   (5th claim), Misrepresentation, Deceit, Fraud (6th claim),
15   Negligent Misrepresentation (7th claim), Aiding and Abetting (9th
16   claim), Fraud as a release from Guaranty (11th claim), Violation
17   of Continuing Guaranty (12th claim), Violation of California Civil

18   _____

19       [2]  Although Ford Credit only brought suit against Michael
     Daugherty in their complaint, counter-claimants include Michael
20   Daugherty as well as Daugherty Lincoln-Mercury.  Michael Daugherty
     filed documents with the court verifying that he was the sole owner
21   of Daugherty Lincoln-Mercury and that he was doing business as
     Daugherty Lincoln-Mercury.
22
         [3]  In the second amended counterclaim, defendants also bring
23   suit against Ford Motor Company (Lincoln Mercury Division)(referred
     to herein as "Lincoln Mercury").  However, because Lincoln-Mercury
24   did not originally bring suit against defendants, they cannot be
     considered counterclaims.
25       The court grants defendants twenty (20) days from the date of
     this order to amend the second amended counterclaim so as to assert
26   a third-party action against Lincoln Mercury.

1  Code section 2819 (13th claim), Aiding and Abetting (14th claim).

2       Ford Credit moves to dismiss causes of action three, four,

3  five, six, seven, nine, and fourteen.  In addition, Ford Motor

4  Credit Co. moves for a more definite statement as to defendants'

5  eleventh, twelfth, and thirteenth causes of action.

6                                    **I.**

7                                  **FACTS**[4]

8       On or about June 22, 1999, DLMI signed Dealer Sales and

9  Service Agreements ("agreements") with Lincoln Mercury, whereby

10 DLMI was franchised as a seller and servicer of automobiles

11 manufactured and distributed by Lincoln Mercury.  Each agreement

12 was for a term which expired on June 30, 2002.  By separate

13 addenda, Lincoln Navigator and Lincoln Blackwood vehicles were

14 added to the Agreements.

15      On or about June 22, 1999, DLMI entered into an agreement with

16 Ford Credit wherein Ford Credit would supply the wholesale flooring

17 line for the purchase by DLMI of new Lincoln and Mercury vehicles

18 from Lincoln Mercury.  At that time, DLMI applied for and received

19 a $2 million credit flooring line, which was the amount required

20 by Lincoln Mercury for the operation of its Lincoln and Mercury

21 franchises.  DLMI alleges that on June 22, 1999, it was induced by

22 Ford Credit to sign a Wholesale Continuing Guaranty ("guaranty")

23 _____

24      [4]  Unless otherwise noted, all facts are derived from
   defendants' counterclaim.  As mentioned above, defendants bring
25 claims against Ford Motor Credit Co. as well as Lincoln Mercury.
   Although defendants refer to Lincoln Mercury as a
25 "counterclaimant," the court will not do so here as that is
26 inappropriate.  <u>See</u> note 3 <u>supra</u>.

                                    3

which was required for it to obtain wholesale financing.  DLMI
alleges that shortly after it executed the Agreements in June of
1999, and continuing through June 2000, Lincoln Mercury shipped to
DLMI new vehicles which it knew were never ordered by DLMI during
the normal course of its business operations.  Consequently, DLMI
became vastly overstocked with both desirable and undesirable
models of Lincoln and Mercury vehicles.  By June of 2000, DLMI's
inventory of Lincoln and Mercury vehicles had risen to over
$7,600,000 - far in excess of DLMI's approved credit line and
disproportionate to the normal inventory volume in the industry.
At no time had DLMI or Daugherty requested that Ford Credit
increase DLMI's flooring line to accommodate this inventory.  DLMI
and Daugherty learned that representatives of Lincoln Mercury had
met with representatives of Ford Credit in order to secure an
increase in DLMI's flooring line with Ford Credit without DLMI's
or Daugherty's knowledge or consent.

In July 2000, DLMI's flooring line was suspended by Ford
Credit.  This suspension is referred to in the automobile industry
as being placed on "credit hold."[5]  DLMI and Daugherty subsequently
learned that representatives of Lincoln Mercury had again met with
representatives of Ford Credit, without DLMI's knowledge and had
requested that Ford Credit approve the building by Lincoln Mercury

---

[5]   Defendants explain that a dealer put on "credit hold" is
unable to order additional vehicle inventory from Lincoln Mercury
without a manual computer override from someone at Lincoln Mercury.
Also, Ford Credit would be required to give its consent to any
further outlay of credit to the dealer.  Countercl. at 10.

1    of even more units for delivery to DLMI.  These vehicles would then
2    be charged against DLMI's suspended credit line with Ford Credit.
3    At no time did DLMI and Daugherty agree to further modify the terms
4    of the credit flooring agreement with Ford Credit to allow for an
5    additional increase in DLMI's flooring line.  After July 2000,
6    Lincoln Mercury built and delivered approximately 90 vehicles to
7    DLMI without DLMI's approval and Ford Credit placed them on DLMI's
8    flooring line.  As a direct and proximate result of the conduct of
9    Lincoln Mercury and Ford Credit, DLMI alleges that it sustained
10   significant damages and was forced to temporarily cease operations
11   as a Lincoln Mercury dealer.

12                                   **II.**

13                              **STANDARDS**

14   **A.   DISMISSAL STANDARDS UNDER FED. R. CIV. P. 12(b)(6)**

15        On a motion to dismiss, the allegations of the complaint must
16   be accepted as true.  See <u>Cruz v. Beto</u>, 405 U.S. 319, 322 (1972).
17   The court is bound to give the plaintiff the benefit of every
18   reasonable  inference  to  be  drawn  from  the  "well-pleaded"
19   allegations of the complaint.  See <u>Retail Clerks Intern. Ass'n,</u>
20   <u>Local 1625, AFL-CIO v. Schermerhorn</u>, 373 U.S. 746, 753 n.6 (1963).
21   Thus, the plaintiff need not necessarily plead a particular fact
22   if that fact is a reasonable inference from facts properly alleged.
23   See id.; see also <u>Wheeldin v. Wheeler</u>, 373 U.S. 647, 648 (1963)
24   (inferring fact from allegations of complaint).

25        In general, the complaint is construed favorably to the
26   pleader.  See <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974).  So

                                    5

1  construed, the court may not dismiss the complaint for failure to
2  state a claim unless it appears beyond doubt that the plaintiff can
3  prove no set of facts in support of the claim which would entitle
4  him or her to relief.  See Hishon v. King & Spalding, 467 U.S. 69,
5  73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).
6  In spite of the deference the court is bound to pay to the
7  plaintiff's allegations, however, it is not proper for the court
8  to assume that "the [plaintiff] can prove facts which [he or she]
9  has not alleged, or that the defendants have violated the . . .
10 laws in ways that have not been alleged."  Associated General
11 Contractors of California, Inc. v. California State Council of
12 Carpenters, 459 U.S. 519, 526 (1983).

13 **B.  DISMISSAL STANDARDS UNDER FED. R. CIV. P. 12(e)**

14      "If a pleading to which a responsive pleading is permitted is
15 so vague or ambiguous that a party cannot reasonably be required
16 to frame a responsive pleading, the party may move for a more
17 definite statement before interposing a responsive pleading."  Fed.
18 R. Civ. P. 12(e).  "The situations in which a Rule 12(e) motion is
19 appropriate are very limited."  5A Charles A. Wright & Arthur R.
20 Miller, Federal Practice and Procedure § 1377 (1990).  Furthermore,
21 absent special circumstances, a Rule 12(e) motion cannot be used
22 to require the pleader to set forth "the statutory or
23 constitutional basis for his claim, only the facts underlying it."
24 McCalden v. California Library Ass'n, 955 F.2d 1214, 1223 (9th
25 Cir.1990).  However, "even though a complaint is not defective for
26 failure to designate the statute or other provision of law

6

1  violated, the judge may in his discretion . . . require such detail

2  as may be appropriate in the particular case." McHenry v. Renne,

3  84 F.3d 1172, 1179 (9th Cir. 1996).

4                                  **III.**

5                                **ANALYSIS**

6        Plaintiff, Ford Credit, moves to dismiss seven causes of

7  action brought against it by defendants.  Ford Credit also requests

8  that defendants provide a more definite statement regarding three

9  causes of action.  I decide these motions based on the parties'

10  brief and after oral argument.

11 **A.  MOTION TO DISMISS**

12        **1. Business Torts**

13              **a.  Fourth Claim: Interference with Contractual Relations**

14        The elements which a plaintiff must plead to state the cause

15  of action for intentional interference with contractual relations

16  are: (1) a valid contract between plaintiff and a third party; (2)

17  defendant's knowledge of this contract; (3) defendant's intentional

18  acts designed to induce a breach or disruption of the contractual

19  relationship; (4) actual breach or disruption of the contractual

20  relationship; and (5) resulting damage.  Quelimane Co., Inc. v.

21  Stewart Title Guaranty Co., 19 Cal.4th 26, 55 (1998)(quoting

22  PG & E, 50 Cal.3d 1118, 1127 (1990)).  Ford Credit maintains

23  defendants' fourth cause of action should be dismissed because DLMI

24  failed to plead the existence of a third-party contract.  The

25  contention is without merit.

26  ////

                                    7

1    Ford Credit relies on <u>Applied Equipment Corp. v. Litton Saudi</u>

2    <u>Arabia Ltd.</u>, 7 Cal.4th 503 (1994), to argue that "there can be no

3    interference with an economic interest between multiple parties who

4    had contracted to facilitate a single commercial enterprise - even

5    if two of the parties had conspired against the third."  Mot. at

6    5.   The California Supreme Court concluded in <u>Applied Equipment</u>

7    that a party may not be held liable for tortious interference with

8    its own contract.

9        The facts of <u>Applied Equipment</u> are somewhat analogous to the

10   case at bar - two parties (Litton and Varian) were involved in the

11   same business transaction with Applied Equipment, but each held

12   separate contracts with Applied Equipment.  The court simply held

13   that each party (Litton and Varian) could not be held liable for

14   interfering with its own contract with Applied

15   Equipment.  In so holding, the court made clear that:

16           Nothing we have said suggests that Litton may not be
             liable for direct interference with the Applied/Varian
17           purchase order (to which it was not a party) or that
             Varian may not be held liable for direct interference
18           with the Applied/Litton subcontract (to which it was not
             a party), provided that each of the elements of the tort
19           of interference with contract is satisfied.  We offer no
             opinion as to whether those elements can be satisfied in
20           this case; we hold only that Varian may not be held
             liable to Applied for conspiracy to interfere with Varian's own contract – the Applied/Varian purchase
21   order.

22
     <u>Applied</u>, 7 Cal.4th at 521.
23
24       As defendants point out, and as Ford Credit recognizes,

25   defendants executed separate contracts with both Ford Credit and

26   Lincoln Mercury.  Nevertheless, Ford Credit insists the fourth

                                         8

1    claim was improperly pled with regards to the contractual

2    relationships that existed between DLMI, Lincoln Mercury, and Ford

3    Credit.  Ford Credit argues that <u>Applied Equipment</u> stands for the

4    proposition that if all parties were involved in a single business

5    endeavor, no interloper had interfered with the contract and the

6    cause of action would fail.  In light of the court's explanation

7    in <u>Applied Equipment</u>, that argument cannot lie.

8         Ford Credit can be held liable for interference with contract

9    if the contract at issue is not one to which it is a party - even

10   if, in fact, it was one of the parties involved in a single

11   commercial enterprise, "so long as each of the elements of the tort

12   of interference is satisfied."  <u>Applied</u>, <u>id</u>.

13        Turning to defendants' counterclaim, they do not allege that

14   Ford Credit interfered with the contracts between Ford

15   Credit/Daugherty and DLMI. Rather, defendants' counterclaim states

16   that "Ford Credit interfered with DLMI's existing contractual

17   relations with Lincoln Mercury . . . ." Countercl. at 15.  The

18   counterclaim here thus alleged a contract between Lincoln Mercury

19   and defendants, an element of the prima facie case. Ford Credit's

20   knowledge of the Lincoln Mercury/DLMI contract is alleged where

21   defendants aver that Ford gave DLMI a $2 million credit line

22   because Lincoln Mercury's contract required that for the operation

23   of the franchise. Countercl. at 10. Defendants allege disruption

24   where they explain that because Ford Credit "increased DLMI's

25   existing $2 million credit line to approximately $7.6 million

26   without the knowledge or consent of DLMI or Daugherty," defendants

9

1  were overstocked with cars they could not sell, causing Lincoln

2  Mercury to put it on a "credit hold" on defendants' account so they

3  could not receive additional inventory.  Countercl. at 10.

4  Finally, defendants allege that Ford acted "with full knowledge

5  that DLMI would be unable to economically sustain such a

6  exponentially large increase," and that DLMI sustained damages and

7  "was forced to temporarily cease operations as a Lincoln Mercury,"

8  satisfying the intent and resulting damage elements of the prima

9  facie case. Countercl. at 16.  I conclude that the counterclaim

10  sufficiently alleges a cause of action for intentional interference

11  with existing contractual relations.[6]

12          **b.   <u>Fifth Claim: Interference with Prospective Economic</u>**
                 **<u>Advantage</u>**

13

14      To state a claim for intentional interference with economic

15  advantage, plaintiff must allege: 1) an existing relationship or

16  one "containing the probability of future economic benefit"; 2)

17  knowledge by the defendant of the relationship; 3) acts by

18  defendant designed to disrupt the relationship; 4) actual

19  disruption of the relationship; 5) damages proximately caused by

20  the acts of the defendant.  <u>Della Penna v. Toyota Motor Sales, USA</u>,

21  11 Cal.4th 376, 380 n.1 and 392-93 (1995).  The act must be

22  "wrongful by some legal measure other than the fact of interference

23  _____

24          [6]  Defendants also allege that Ford Credit interfered with
        existing contracts between it and its employees, customers, and
        suppliers. I need not consider the adequacy of that pleading since
25      they have alleged facts to support the tort as it relates to the
        contractual relationship between DLMI and Lincoln Mercury, and thus
26      the cause of action cannot be dismissed.

1   itself." <u>Id</u>. at 393.  It is "plaintiff['s] burden to prove as an

2   element of the cause of action itself, that the defendant['s]

3   conduct was independently wrongful."  <u>Bed, Bath & Beyond of La</u>

4   <u>Jolla, Inc. v. La Jolla Vill. Square Venture Partners</u>, 52

5   Cal.App.4th 867 (1997).  The tort of intentional interference with

6   prospective economic advantage imposes liability for improper

7   methods of disrupting or diverting the business relationship of

8   another which fall outside the boundaries of fair competition.

9   <u>Settimo Assoc. v. Environ Sys., Inc.</u>, 14 Cal.App.4th 842, 845

10  (1993).

11      While the tort of intentional interference with contract

12  requires a valid contract, the tort of intentional interference

13  with prospective economic advantage merely requires conduct that

14  was wrongful by some legal measure other than the fact of

15  interference, <u>Della Penna</u>, <u>supra</u>, and that the conduct disrupts the

16  business relationship of another.  The California Supreme Court has

17  recognized that both torts enable a party to a contract to sue a

18  stranger to that contract for interfering with the contract and

19  both require an intentional act.  <u>Pacific Gas & Electric v. Bear</u>

20  <u>Stearns & Co.</u>, 50 Cal. 3d 1118, 1126 (1990).  Put somewhat

21  differently, interference with prospective advantage is a tort that

22  covers a broader range of conduct, but a party who alleges the

23  prima facie elements of intentional interference with contract may

24  also bring a interference with prospective economic advantage claim

25  ////

26  ////

1  using the same alleged facts.[7]  Ford Credit is thus incorrect in

2  asserting that a party "seeking damages for the tortious

3  interference with prospective business advantage must establish the

4  same elements needed to sustain a claim for relief for the

5  interference with contractual relations."  Mot. at 7.  Rather, a

6  party may choose to plead both torts if it can establish the

7  elements for the tortious interference with contractual relations.

8  Where, as here, plaintiff has alleged the elements for interference

9  with contract, I conclude that the fifth claim for relief is not

10  subject to dismissal.

11      **2.  <u>Fraud-Related Torts</u>**

12      Ford Credit notes that Daugherty and DLMI allege three claims

13  for relief that sound in fraud:

14      (1) Third claim for relief:  violation of Section 17200 of the

15  California Unfair Business Practices Act.  Ford Credit explains

16  that the claim as pled relies on allegations of deceit as defined

17  by California Civil Code §§ 1709 and 1710.  California's Unfair

18  _____

19      [7]  As the California Supreme Court explained in <u>Pacific Gas</u>
20  <u>& Electric</u>:

21      "The tort of interference with prospective economic
       advantage protects the same interest in stable economic
       relationships as does the tort of interference with
22     contract, though interference with prospective advantage
       does not require proof of a legally binding contract.
23     The chief practical distinction between interference
       with contract and interference with prospective economic
24     advantage is that a broader range of privilege to
       interfere is recognized when the relationship or
25     economic advantage interfered with is only prospective."

26  50 Cal.3d at 1126 (citation omitted).

1  Business Act at Business and Professions Code § 17200 holds a party

2  liable for unfair competition characterized as "unlawful, unfair,

3  or fraudulent."[8]

4      (2) Sixth Claim for Relief - Misrepresentation, deceit, fraud

5  under California Civil Code section 1709.  Countercl. at 19, ¶ 120.

6      (3) Seventh Claim for Relief - Negligent Misrepresentation.[9]

7      Ford Credit maintains that these claims must fail because

8  defendants do not plead fraud with the specificity required under

9

10      [8]  Business and Professions Code section 17200 provides: "As
   used in this chapter, unfair competition shall mean and include any
11  unlawful, unfair or fraudulent business act or practice and unfair,
   deceptive, untrue or misleading advertising and any act prohibited
12  by Chapter 1 (commencing with Section 17500) of Part 3 of Division
   7 of the Business and Professions Code."  The Supreme Court
13  explained that section 17200 "defines 'unfair competition' as any
   'unlawful, unfair or fraudulent business practice and unfair,
14  deceptive, untrue or misleading advertising . . . .' (§ 17200.)
   The Legislature intended this 'sweeping language' to include "
15  'anything that can properly be called a business practice and that
   at the same time is forbidden by law.' " [Citations.] Bank of the
16  West v. Superior Court, 2 Cal.4th 1254, 1266-1267 (1992).  Section
   17200 "borrows" violations of federal, state, or local law and
17  treats them as unlawful practices which are independently
   actionable under section 17200. State Farm Fire & Casualty Co. v.
18  Superior Court , 45 Cal.App.4th 1093, 1102-1103 (1996).  Since
   section 17200 is in the disjunctive, it establishes three separate
19  types of unfair competition.  The statute prohibits practices that
   are either "unfair," or "unlawful," or "fraudulent." See State
20  Farm, id. at 1102.
       DLMI maintains that they did not restrict themselves to claims
21  under section 17200 based solely on fraud.  Opp'n at 14.  While the
   allegations may well fall within the "unfair" or unlawful rubric,
22  they also rely on allegations of fraud, and accordingly, the court
   must address Ford Credit's contention.
23

24      [9]  The same elements comprise a cause of action for negligent
   misrepresentation, except there is no requirement of intent to
25  induce reliance.  Small v. Fritz Companies, Inc. 30 Cal.4th 167,
   173 (2003).  In both causes of action, the plaintiff must plead
26  that he or she actually relied on the misrepresentation. Mirkin v.
   Wasserman, 5 Cal.4th 1082, 1088-1089 (1993).

Rule 9(b) of the Federal Code of Civil Procedure.  Mot. at 8.
Because these three claims essentially rely on the same allegations
of fraudulent conduct, the discussion below addresses fraud claims
made in all three causes of action.

Under these causes of action, defendants seek damages under
California Civil Code § 1709.  That statute imposes liability on
those who engage in fraud - stating, "one who willfully deceives
another with intent to induce him to alter his position to his
injury or risk, is liable for any damages which he thereby
suffers." Cal. Civ. Code § 1709.  In order to establish a cause of
action for fraud, a plaintiff must plead and prove all the elements
of fraud, namely: (1) misrepresentation, (2) knowledge of falsity,
(3) intent to induce reliance, (4) justifiable reliance, and (5)
resulting damage.  See Conrad v. Bank of America, 45 Cal.App.4th
133, 156 (1996).  When pleading claims amounting to fraud, a
plaintiff must satisfy the demands of Rule 9(b) of the Federal
Rules of Civil Procedure, which states that, "in all averments of
fraud or mistake, the circumstances constituting fraud or mistake
shall be stated with particularity." Fed. R. Civ. P. 9.  General
pleading of the legal conclusion of fraud is insufficient.  Courts
have explained this rule as requiring that claims of fraud include
the "'who, what, when, where, and how' of the alleged misconduct."
Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997).  Ultimately,
such claims must be "specific enough to give defendants notice of
the particular misconduct . . . so that they can defend against the
charge."  Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1108 (9th

14

1  Cir. 2003).

2       In the instant case, defendants have adequately met the
3  pleading requirements for fraud.  As they contend, they allege that
4  without their knowledge Ford Credit "raised the credit limit of
5  DLMI from the initial limit of $2,000,000 to over $7,600,000, and
6  then allowed Lincoln Mercury to charge the delivery of vehicles to
7  DLMI against DLIM's raised limit."  Countercl. at 19.  Ford Credit
8  purportedly did this twice - once shortly after June of 1999, and
9  again, after July of 2000 when their credit was already suspended.
10  Countercl. at 10.  They claim that Ford Credit continued to allow
11  Lincoln Mercury to "continually charge vehicles delivered to DLMI
12  against DLMI's suspended credit line" and that through their
13  "agents and representatives . . . deceive[d] DLMI as to the limit
14  on its flooring line and as to the proper procedures for charging
15  vehicles against DLMI's original credit limit."  Countercl. at 20.
16  Defendants aver that "[b]y increasing DLMI's credit line, without
17  DLMI's or Daugherty's knowledge or prior consent . . . Ford Credit
18  caused DLMI to suffer further financial losses . . . ."  Id.   Ford
19  Credit maintain that defendants have failed to allege that actual
20  representations were made by them and that Ford Credit could not
21  have made misrepresentations because the meetings attended by
22  Lincoln-Mercury and Ford Credit were "secret."  Repl. at 5.  This
23  argument is unavailing.

24       Under California law, misrepresentation may also include
25  "concealment" or "nondisclosure," Small v. Fritz Companies, Inc.,
26  30 Cal.4th 167, 173 (2003).  Here, defendants explain that Ford

15

1   Credit deceived them by increasing their credit line,

2   misrepresenting what their credit line allowed, and deceived them

3   as to the proper procedures for charging vehicles against their

4   original flooring limit.  Opp'n at 15.  The inference that must and

5   can be made is that defendants were led to believe through Ford

6   Credit's conduct and fraudulent nondisclosure of information that

7   their credit line was not on "credit hold," when, in fact, it did

8   not allow for a higher inventory volume of Lincoln Mercury

9   vehicles.  Upon review of the entire counterclaim, I find that

10  defendant has alleged particular omissions or misrepresentations

11  on the part of Ford Credit to comply with Rule 9(b).[10]

12      **3.   Ninth and Fourteenth Causes of Action: Violation of
             Vehicle Code § 1173.2[11]**

13

14      Defendants charge Ford Credit with aiding and abetting Lincoln

    Mercury's alleged violation of Vehicle Code § 11713.2.  Section
15
    11743.2 provides:
16
        It shall be unlawful and a violation of this code for any
17      manufacturer, manufacturer branch, distributor, or distributor
        branch licensed under this code to coerce or attempt to coerce any
18      dealer in this state:

19  _____

        [10]  In drawing this conclusion, this court recognizes that
20  Rule 9(b)'s particularity requirement must be read in harmony with
    the emphasis on conciseness and the focus on giving fair notice
21  contained in Federal Rule of Civil Procedure 8(a).  I must apply
    Rule 9(b) in a manner that effectuates its purpose in ensuring that
22  allegations of fraud are specific enough to apprise the accused of
    the misconduct alleged, so that the accused "can defend against the
23  charge and not just deny that they have not done anything wrong."
    Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985).  I find that
24  the fraud causes of action are specific enough to put Ford Credit
    on notice and to allow them to defend against these charges.
25
        [11]  Both causes of action appear to make the same claim under
26  the Vehicle Code.

                                  16

1    (a) To order or accept delivery of any motor vehicle, part or
2    accessory thereof, appliance, equipment or any other
     commodity not required by law which shall not have been
3    voluntarily ordered by the dealer.

4    Ford Credit argues that this cause of action should be

5    dismissed because DLMI never alleged any facts to support that it

6    was actually coerced, as required under this vehicle code.  Their

7    point is well-taken.  Indeed, nowhere in defendants' 119-paragraph

8    counterclaim do defendants allege coercion - "threat of physical

9    harm or economic compulsion" -- which would require them to take

10   the undesired action - in this case, to accept delivery of excess

11   Lincoln Mercury vehicles.   <u>Louisville Title Ins. Co. v. Surety</u>

12   <u>Title & Guar. Co.</u>, 60 Cal.App.3d 781, 801 (1976).   Defendants

13   allege repeatedly that they were unaware that their credit line had

14   been increased by Ford Credit in order to allow Lincoln Mercury to

15   "foist vehicles on DLMI," but this allegation tends to undermine

16   defendants' coercion claims because a "threat of physical harm or

17   economic compulsion" on the part of Ford Credit and Lincoln Mercury

18   would necessarily require awareness of the scheme to "foist

19   vehicles" onto defendants.

20   During oral argument, defendants acknowledge that they did not

21   allege coercion on the part of Ford Credit anywhere in their

22   counterclaim.  Rather, they assert that they will conduct

23   discovery as to whether coercion existed on Ford Credit's or

24   Lincoln Mercury's part.  Although the court may infer that Ford

25   Credit committed fraudulent acts based on defendants' allegations,

26   the court cannot infer from the facts alleged that Ford Credit

1  coerced or aided and abetted another party in coercing defendants.

2  Despite the deference the court is bound to pay to the defendants'

3  allegations, it is not proper for the court to assume that "the

4  [defendant] can prove facts which [he or she] has not alleged, or

5  that the defendants have violated the . . . laws in ways that have

6  not been alleged." <u>Associated General Contractors of California</u>,

7  <u>Inc. v. California State Council of Carpenters</u>, 459 U.S. 519, 526

8  (1983). Accordingly, claims nine and fourteen are dismissed

9  without prejudice.[12]

10 **B.   MOTION FOR A MORE DEFINITE STATEMENT – ELEVENTH, TWELFTH AND THIRTEENTH CLAIMS FOR RELIEF**

11

12      Under these three claims, defendants seek a determination that

13 his continuing guaranty with Ford Credit is not enforceable due to

14 fraud (eleventh claim), that Ford Credit may enforce the guaranty

15 because it acted with illegal purpose (twelfth claim), and that the

16 guaranty is void because Ford altered the terms of the underlying

17 obligation without his consent (thirteenth claim). Ford Credit

18 complains that these three claims require more specificity because

19 "Daugherty does not state which of his personal guaranties he

20 believes is voidable." They explain that the transaction between

21 Ford Credit and defendants involved two guaranties: (1) A

22 continuing guaranty for the obligations of DLMI under its wholesale

23

24      [12]  As the court has already reminded defendants during
oral argument, any claims for which there are not sufficient facts
25 alleged should not be plead. If, through discovery, defendants
discover facts which support a new cause of action, defendants may,
26 at that point, move to amend the counterclaim to allege the claim.

18

1   agreement, and (2) a Continuing guaranty for DLMI's obligations

2   under the Capital Loan agreement.

3       Ford Credit maintains that the twelfth and thirteenth claims

4   for relief are unclear because they fail to identify the type of

5   remedy defendants seek (rescission, exoneration, or monetary

6   damages).   They state that their defenses will vary markedly

7   depending on which remedy defendants seek and which guaranty is at

8   issue.   The Ninth Circuit has held that a "judge may in his

9   discretion . . . require such detail as may be appropriate in the

10  particular case" under Fed. R. Civ. P. 12(e).   Defendants are

11  ordered provide a more definite statement as to the Eleventh,

12  Twelfth and Thirteenth Claims for Relief.   Defendants are directed

13  to specify which guaranty is at issue for each claim, and the type

14  of remedy they are seeking as to these claims.

15                              **IV.**

16                           **CONCLUSION**

17      For all the foregoing reasons, the court hereby ORDERS that:

18      1.   Plaintiff's motion to dismiss is GRANTED in part and

19  DENIED in part as follows:

20          a.   Ford Credit's motions directed to the third, fourth,

21  fifth, sixth, and seventh causes of action are DENIED.

22          b.   Defendants' ninth and fourteenth causes of action

23  are DISMISSED without prejudice.

24  ////

25  ////

26  ////

1      2.  Defendants are ordered to provide a more definite

2  statement as to the eleventh, twelfth, and thirteenth causes of

3  action within twenty (20) days of this order.

4      IT IS SO ORDERED.

5      DATED:  May 27, 2005.

6                                    /s/Lawrence K. Karlton

                                     LAWRENCE K. KARLTON
7                                    SENIOR JUDGE
                                     UNITED STATES DISTRICT COURT
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26