```
                    UNITED STATES DISTRICT COURT

                   FOR THE EASTERN DISTRICT OF CALIFORNIA


FORD MOTOR CREDIT COMPANY,

        Plaintiff,

    v.                                  NO. CIV. S-04-2344 LKK/JFM

MICHAEL DAUGHERTY,

        Defendant.
                                    /
AND RELATED COUNTER-CLAIM AND
THIRD-PARTY COMPLAINT.
                                    /
```

Pending before the court is a motion for judgement on the pleadings, brought by third party defendant, Ford Motor Company, Lincoln Mercury Division ("Lincoln Mercury"). Lincoln Mercury alleges that claims raised by third party plaintiffs, Daugherty Lincoln-Mercury, Inc. ("DLMI"), and Michael Daugherty ("Daugherty"), are barred under the doctrine of collateral estoppel.[1] Specifically, Lincoln Mercury argues that third party

---

[1] The claims at issue are: (1) breach of contract; (2) breach of covenant of good faith and fair dealings; (3) unfair business practices; (4) interference with contractual relations; (5) tortious interference with prospective business advantage;

1

plaintiffs raise the identical factual allegations in their third amended complaint as were raised and decided in an administrative hearing before the California New Motor Vehicle Board ("NMVB"). Lincoln Mercury also asks that the court dismiss DLMI's eighth and ninth claims because this court dismissed the identical claims against Ford Motor Credit in response to Ford Motor Credit's motion to dismiss.

## I.
## DAUGHERTY'S LINCOLN MERCURY DEALERSHIP[2]

In March of 1999, Michael Daugherty, owner of DLMI, executed a buy-sell agreement for the purchase of a Lincoln Mercury dealership to be operated in Sacramento, California. In June of 1999, DLMI was enfranchised by Lincoln Mercury as a Lincoln and Mercury dealer under three separate franchise agreements. During the course of operations, DLMI entered into various financing arrangements with plaintiff and counter-defendant, Ford Motor Credit Company ("Ford Credit"), including an agreement for a capitalization loan and a separate agreement for wholesale flooring for DLMI's new vehicle inventory.

What happened next is the subject of this litigation. According to DLMI, on or about December 1, 2001, as a result of fraudulent actions of Lincoln Mercury and Ford Credit, DLMI was forced to cease its Lincoln and Mercury sales operations.

---

(6) Misrepresentation-deceit-fraud.

[2] These facts are adopted from the parties' briefs.

2

According to Lincoln Mercury, DLMI ordered an excess number of cars and was unable to sell all the cars ordered. DLMI's actions caused the dealership to fail.

It is undisputed that on January 23, 2002, Lincoln Mercury notified DLMI that it intended to terminate DLMI's Lincoln and Mercury franchise agreements. DLMI then filed a protest with the California New Motor Vehicle Board, pursuant to California Vehicle Code Section 3060, protesting the proposed termination of its franchise.

## II.

### THE DECISION OF THE NEW MOTOR VEHICLE BOARD

The hearing on the protest occurred before an administrative law judge ("ALJ") for the NMVB. The ALJ heard evidence on the termination protest on January 7 and 9, 2003. On April 24, 2003, the NMVB adopted the proposed decision of the ALJ.

The specific issue pending before the Board was "whether Lincoln Mercury has good cause for the termination of Daugherty's Lincoln and Mercury Franchises." NMVB decision at 5. Pursuant to section 3066(b) of the California Vehicle Code, Lincoln Mercury had the burden to establish good cause for the termination of the franchise.[3]

////

---

[3] In making the determination, the ALJ considered factors such as the amount of business transacted by the franchisee, the permanency of the investment, whether it is injurious to the public for the franchise to be modified, and whether the franchisee failed to fulfill the warranty obligations, to name a few.

The ALJ made two important findings of fact relevant to this litigation. First, the ALJ determined that Daugherty did in fact order the additional cars to sell, a fact that third party plaintiffs contest in this litigation. Specifically, the ALJ found that "there is no doubt that Daugherty was aware that these vehicles were being ordered to be built and delivered and that Daugherty not only desired them but required them in order to stay operational." NMVB decision at 24. Second, the ALJ concluded that Lincoln Mercury had "established that Daugherty was not and is not conducting an adequate amount of business as compared to the business available to it." Id. at 26. The ALJ concluded that "the cessation of business by Daugherty was not caused by conduct of representatives of Lincoln Mercury." Id at 27.

Upon the Board's conclusion that good cause had been established for the termination of the DLMI franchise, DLMI petitioned the Sacramento County Superior Court for a writ of administrative mandamus pursuant to Cal. Civ. Proc. Code § 1094.5. The writ was denied by the court.

### III.

**THE THIRD AMENDED COUNTERCLAIM BY THIRD PARTY PLAINTIFFS**

On June 16, 2005 third party plaintiffs filed a third amended counterclaim against Ford Credit and Lincoln Mercury. The counterclaim asserted twelve claims: breach of contract (1st claim; breach of covenant of good faith and fair dealing (2nd claim); unfair business practices (3rd claim); interference with contractual relations (4th claim); tortious interference with

4

1 prospective business advantage (5th claim); misrepresentation-
2 deceit-fraud (6th claim); negligent misrepresentation (7th claim);
3 Violation of California Vehicle Code section 11713.2 against
4 Lincoln Mercury only (8th claim); Daugherty's separate claim of
5 violation of California Vehicle Code section 1173.2 against Lincoln
6 Mercury (9th claim); Daugherty's separate claim against Ford Credit
7 for fraud as a release from guaranty (10th claim); Daugherty's
8 separate claim against Ford Credit for violation of continuing
9 guarantees (11th claim).
10   Lincoln Mercury brings this motion for judgment on the
11 pleadings in response to the third amended complaint. This motion
12 only concerns claims one through six and claims eight and nine.

### IV.

### STANDARDS

15   A motion for judgment on the pleadings may be brought "[a]fter
16 the pleadings are closed but within such time as to not delay the
17 trial." Fed. R. Civ. P. 12(c). All allegations of fact by the
18 party opposing a motion for judgment on the pleadings are accepted
19 as true. Doleman v. Meiji Mut. Life Ins. Co., 727 F.2d 1480, 1482
20 (9th Cir. 1984). A "dismissal on the pleadings for failure to
21 state a claim is proper only if 'the movant clearly establishes
22 that no material issue of fact remains to be resolved and that he
23 is entitled to judgment as a matter of law.'" Id. (quoting 5 C.
24 Wright & A. Miller, Federal Practice and Procedure: Civil § 1368,
25 at 690 (1969)); see also McGlinchy v. Shell Chemical Co., 845 F.2d
26 802, 810 (9th Cir. 1988).

When a Rule 12(c) motion is used to raise the defense of failure to state a claim, the motion is subject to the same test as a motion under Rule 12(b)(6). McGlinchy, 845 F.2d at 810; Aldabe v. Aldabe, 616 F.2d 1089, 1093 (9th Cir. 1989). Thus, the motion will be granted only if the movant establishes that "no relief could be granted under any set of facts that could be proven consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); see also Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Newman v. Universal Pictures, 813 F.2d 1519, 1521-22 (9th Cir. 1987). The court must accept all material allegations of the complaint as true and all doubts must be resolved in the light most favorable to the plaintiff. N.L. Indus. Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

However, "[i]f, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(c).

**V.**

**ANALYSIS**

**A.   THE APPLICABILITY OF COLLATERAL ESTOPPEL TO CLAIMS ONE THROUGH SIX**

Lincoln Mercury argues that the determination of the NMVB precludes third party plaintiffs from bringing claims one through six. To prevail, Lincoln Mercury must establish that the NMVB

6

decision satisfies the requirements for the application of collateral estoppel. Lucido v. Superior Court, 51 Cal.3d 335, 337 (1990)("The party asserting collateral estoppel bears the burden of establishing these requirements.")  For the reasons set forth below, Lincoln Mercury succeeds in establishing that collateral estoppel should apply.

### 1.  **Overview of Applicable Law**

Collateral estoppel, also known as issue preclusion, precludes relitigation of issues argued and decided in prior proceedings. Lucido, 51 Cal.3d at 341.  Pursuant to 28 U.S.C. § 1738 and Supreme Court decisions, federal courts apply the preclusion law of the state in which the judgment was rendered. Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373 (1985); see also Kremer v. Chemical Construction Corp., 456 U.S. 461, 466-67 & n. 6 (1982); Allen v. McCurry, 449 U.S. 90, 96 (1980).

Under California law, Lincoln Mercury faces a three part test. First, Lincoln Mercury must demonstrate that the NMVB proceeding was adjudicatory in nature. Vandenberg v. Superior Court, 21 Cal.4th 815 (1999)(stating criteria).  Second, it must establish the essential elements of collateral estoppel, see § IV A3 infra. Finally, even if the all the basic requirements are satisfied, the court must consider the public policies underlying the doctrine before concluding that collateral estoppel should apply. Id.

////

////

////

## 2. **Administrative Hearing as a Substitute for Judicial Proceeding**

It is well established that collateral estoppel may apply to decisions made by administrative agencies "[w]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate . . . ." United States v. Utah Constr. Co., 384 U.S. 394, 422 (1966).

As the California Supreme Court explains:

> Whether collateral estoppel is fair and consistent with public policy in a particular case depends in part upon the character of the forum that first decided the issue later sought to be foreclosed. In this regard, courts consider the judicial nature of the prior forum, i.e., its legal formality, the scope of its jurisdiction, and its procedural safeguards, particularly including the opportunity for judicial review of adverse rulings.

Vandenberg, 21 Cal.4th 815, 830.

As applied to the case at bar, the character of the NMVB hearing is similar to that of a judicial proceeding. As is evidenced by the administrative record and transcript, the hearing took place over several days, both sides were represented by counsel and were permitted to testify, call witnesses, cross examine witnesses and engage in discovery. Moreover, DLMI had the opportunity for judicial review and did in fact appeal the decision to Superior Court.[4]  See, e.g., Plaine v. McCabe, 797 F.2d 713, 720

---

[4] Compare to Jacobs v. CBS Broadcasting, 291 F.3d 1173, 1179 (9th Cir. 2002) (collateral estoppel not applied when the determination was made after an informal investigation and there was no testimony but rather informal discussion between the

8

1  (9th Cir. 1986) (giving administrative proceeding collateral
2  estoppel effect because "[t]he fairness hearing was conducted
3  similarly to a court proceeding.  It was an adversary proceeding
4  in which opposing parties were present and represented by counsel
5  and were allowed to call, examine, cross-examine and subpoena
6  witnesses . . .").

### 3.  **The Elements of the Collateral Estoppel Doctrine**

The application of issue preclusion is a fact-based inquiry and must be decided according to the particular evidence and circumstances of each case.  Bell v. Wells Fargo Bank, N.A., 62 Cal.App.4th 1382 (1st Dist. 1998).  Ford must establish that: (1) the issue sought to be precluded from relitigation is identical to that decided in the former proceeding; (2) the issue must have been actually litigated in the prior proceeding; (3) the issue was necessarily decided in the proceeding; (4) there was a final judgment on the merits; and (5) the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.  Lucido, 51 Cal.3d at 341.

The court quickly disposes of the last three elements.  These elements are clearly established: there was final judgment on the merits in the NMVB proceeding, the parties are in privity with the prior proceeding, and the issues were necessarily decided by the NMVB.  The court also concludes that the issues are identical and that the issues sought to be precluded were actually decided in the

parties).

9

NMVB proceeding.

Third party plaintiffs argue that the NMVB hearing on the protest pertained solely to the issue of whether there was good cause for the termination of Daugherty's Lincoln Mercury franchise, and did not address the issues raised in the third amended complaint.  Third party plaintiffs also argue that the issues in the third amended complaint are identical in nature to the issues raised in a petition that was never heard by the NMVB.  The court is not persuaded.

The NMVB made clear factual findings.  Specifically, the NMVB concluded that Daugherty ordered the extra cars, that he was aware he ordered the extra cars and that the termination of the franchise was not caused by the conduct of Lincoln Mercury.

The 'identical issues' requirement addresses "whether 'identical factual allegations' are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same."  <u>Lucido</u>, 51 Cal.3d at 342.  Here, there are identical factual allegations at stake in the two proceedings.

Each of the six claims that are at issue in this motion rely on the allegation that Lincoln Mercury and Ford Credit secretly arranged for ordering and shipping an excess number of cars and that it was those actions of Lincoln Mercury and Ford Credit that caused the DLMI franchise to fail.  The NMVB, however, determined to the contrary that DLMI ordered and desired the excess cars and the termination of the franchise was not due to Lincoln Mercury's actions.  In essence, there appears to be no way that third party

plaintiffs can assert the current claims without implicating and contradicting the facts determined by the NMVB.

Moreover, the argument that the claims raise new issues in that they pertain to contract disputes, breach of good faith and fraud, to name a few, is unavailing. These claims still rest on the factual allegations determined by the NMVB.[5] The fact that the factual issues appear within the context of new legal theories is immaterial. See Sutphin v. Speik, 99 P.2d 652, 656 (Cal. 1940) (collateral estoppel is a bar to party presenting a new theory with respect to the same issue previously litigated).

For these reasons, the court finds that the issues pending before the NMVB and the issues stated in the six claims contained in the third amended complaint are identical.

The court also concludes the issues were actually litigated in the NMVB proceeding, thus establishing the last element required for the application of collateral estoppel. Lucido, 51 Cal.3d at 341. It is clear that central to the NMVB's decision was the factual determination that DLMI ordered the excess cars itself and that Lincoln Mercury was not responsible for the failure of the franchise.

Based on the forgoing reasons, the court concludes that Lincoln Mercury has established that the issues are identical and

---

[5] For example, in the breach of contract claim, third party plaintiffs claim that Lincoln Mercury "materially breached its existing contract with DLMI by shipping DLMI unordered vehicles, leaving DLMI with substantially more vehicles than it could sell to consumers in a reasonable amount of time." DLMI Third Amen. Compl. at 12:19.

11

that the issues were actually litigated before the NMVB.

**4.     Public Policy Considerations**

Although the basic requirements for the application of collateral estoppel are met, the public policies underlying the doctrine must be examined before concluding that collateral estoppel should apply.  <u>Lucido</u>, 51 Cal.3d at 342-43.  These considerations include the "preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation." <u>Id</u>.

In this case, these factors weigh in favor of applying collateral estoppel.  If the court were to hear the claims as currently stated, there is a possibility that this court could make a finding of fact contrary to the NMVB, an outcome that would surely undermine the integrity of the judicial system. <u>Id.</u> at 347 ("Public confidence in the integrity of the judicial system is threatened whenever two tribunals render inconsistent verdicts.")

Judicial economy is also served by applying collateral estoppel.  The re-litigation of factual questions that were already conclusively determined by the NMVB does not promote judicial economy; rather, it frustrates judicial economy.   Finally, applying collateral estoppel also serves the policy of protecting parties from vexatious litigation.  To *not* apply collateral estoppel would mean subjecting Lincoln Mercury to litigating issues that they already litigated before the NMVB.

In sum, because the elements of collateral estoppel are established and because the public policy considerations favor

12

application of the doctrine, third party plaintiffs are precluded from relitigating the issue of (1) whether DLMI ordered the excess cars; and (2) whether the termination of the franchise was caused by the conduct of representatives of Lincoln Mercury.

The court, therefore, will grant the motion for judgment on the pleading but with leave to amend. The third party plaintiffs may re-file their complaint if they assert claims that do not implicate, depend on, or contradict the factual allegations already determined by the NMVB.

## VI.

## CLAIMS EIGHT AND NINE

Lincoln Mercury also argues that claims eight and nine should be barred. Claim eight is raised by DLMI against Lincoln Mercury and claim nine is raised by Daugherty against Lincoln Mercury. Both claims allege a violation of California Vehicle Code Section 11713.2.

Lincoln Mercury avers that on May 27, 2005, this court dismissed the identical claims against Ford Motor Credit Company.[6] Since no new allegations of coercion were alleged in the third amended complaint, the new claim against Lincoln Mercury should also be dismissed. DLMI did not address this in their opposition to Lincoln Mercury's motion or at oral argument. The court agrees

---

[6] The court stated in its order that "nowhere in defendant's 119-paragraph counterclaim do defendants allege coercion - 'threat of physical harm or economic compulsion' - which would require them to take the undesired action - in this case, to accept delivery of excess Lincoln Mercury vehicles."

13

with Lincoln Mercury with respect to these claims.

The claims raised against Lincoln Mercury in the third amended complaint are in fact identical to the claims raised against Ford Credit in the second amended complaint, and as Lincoln Mercury points out, the court did dismiss these claims against Ford Credit.

In comparing the third amended complaint with the second amended complaint, it appears that DLMI raises no new factual allegations with respect to these claims. The court notes that during oral argument on Ford Credit's motion to dismiss, counsel for DLMI claimed that they would conduct additionally discovery as to whether coercion (an element of the claim) existed on the part of Ford Credit or Lincoln Mercury. The court has not been presented with any new facts to support claims eight and nine in the third amended complaint and thus the court adopts the same reasoning from its prior decision. To avoid being repetitive, the court directs both parties to its order dated May 27, 2005.

Accordingly, third party defendant's motion for judgment on the pleadings is GRANTED as follows:

1. Claims one through six are DISMISSED without prejudice and with leave to amend. Third party plaintiffs are granted twenty (20) days from the date of the hearing (October 24, 2005) by which to file an amended complaint that does not implicate, rely on or contradict the factual determination made by the NMVB. Third party defendants are granted twenty (20) days from the date of filing of the new complaint to respond by answer or motion.

////

1  2.   Claims eight and nine are DISMISSED with prejudice.

2  IT IS SO ORDERED.

3  DATED: October 31, 2005.

4                                  /s/Lawrence K. Karlton
                                   LAWRENCE K. KARLTON
5                                  SENIOR JUDGE
                                   UNITED STATES DISTRICT COURT