UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FORD MOTOR CREDIT COMPANY,

    Plaintiff,

  v.                                 NO. CIV. S-04-2344 LKK/JFM

MICHAEL DAUGHERTY,

    Defendant.
_____/
AND RELATED COUNTER-CLAIM AND
THIRD-PARTY COMPLAINT.
_____/

    The matter is before the court on two motions to dismiss, one filed by plaintiff and counter-defendant Ford Motor Credit Company ("Ford Credit"), and one filed by third-party defendant Ford Motor Company, Lincoln Mercury Division ("Lincoln Mercury"). In the underlying suit, Ford Credit brings two breach of guaranty claims against defendant Michael Daugherty, alleging that Daugherty induced it to enter into a wholesale agreement and a capital loan and promissory note by promising full payment, but that Daugherty breached these guaranty agreements. Compl. at 2-6. Daugherty answered and filed a counterclaim against Ford Credit. Daugherty

1

and Daugherty Lincoln-Mercury Inc. ("DLMI") also bring a third-party suit against Lincoln Mercury.[1]

In April 2005, Ford Credit moved to dismiss a number of causes of actions alleged in Daugherty's second amended counterclaim. On May 27, 2005, the court denied Ford Credit's motions directed to the third, fourth, fifth, sixth, and seventh causes of action. The court dismissed defendants' ninth and fourteenth causes of action without prejudice. Daugherty subsequently filed a third amended counterclaim against Ford Credit and Daugherty and DLMI filed a third-party action against Lincoln Mercury.

In September 2005, third-party defendant Lincoln Mercury filed a motion for judgment on the pleadings. On October 31, 2005, the court dismissed without prejudice claims one through six of defendants' counterclaim. The court dismissed with prejudice claims eight and nine.[2] Lincoln Mercury argued that Daugherty raised identical factual allegations in their third amended complaint as were raised and decided in an administrative hearing before the California New Motor Vehicle Board ("NMVB")," and were

---

[1] In earlier rounds of briefing, Daugherty referred to Ford Credit and Lincoln Mercury as counterclaim defendants, even though Lincoln was not a party in the original suit. Consequently, the court ordered defendant to file a third-party suit against Lincoln Mercury if it wished to have Lincoln Mercury as a party to the suit. Thus, DLMI is the third-party plaintiff. However, because the parties continue to refer to Daugherty and DLMI as defendants, the court will do so for purposes of this motion.

[2] Claims eight and nine, brought under the California Motor Vehicle Code, were dismissed on May 27, 2005 with prejudice because Daugherty failed to raise any new factual allegations. See October 31, 2005 Order at 13-15.

1  thus collaterally barred from bringing such counterclaims.

2  On November 14, 2005, defendants filed a fourth amended answer
3  and amended third-party complaint against Lincoln Mercury and
4  amended counterclaim against Ford Credit.  The fourth amended
5  counterclaim reasserts a number of claims that were previously
6  dismissed:  Breach of Contract (first claim), Breach of the
7  Covenant of Good Faith and Fair Dealings (second claim), Unfair
8  Business Practices (third claim), Interference with Contractual
9  Relations (fourth claim), Interference with Prospective Business
10 Advantage (fifth claim), and Misrepresentation/Deceit/Fraud (sixth
11 claim).  Daugherty also alleges Negligent Misrepresentation
12 (seventh claim),[3] which was not challenged by third-party defendant
13 previously, as well as three claims brought only against Ford
14 Credit:  fraud as a release from guaranty (eighth claim), Violation
15 of continuing guarantees (ninth claim), and violation of California
16 Civil Code § 2819 (twelfth claim).[4]  Pending before this court are
17 Ford Credit's and Lincoln Mercury's motions to dismiss defendants'
18 counterclaims.[5]
19 ////
20 ////
21 ////

---

[3] Claims one through seven are brought against both Ford Credit and Lincoln Mercury.

[4] There are no tenth and eleventh claims.

[5] Ford Credit moves to dismiss every claim brought against it (1-7, 8, 9, 12), and Lincoln Mercury moves to dismiss every claim brought against it (1-7).

3

**I.**

**BACKGROUND FACTS**[6]

The court has set forth the background facts multiple times before, but repeats them here because they bear on the instant motion. Suffice it to say that in 1999, Daugherty, owner of DLMI, executed a buy-sell agreement for the purchase of a Lincoln Mercury dealership to be operated in Sacramento, California. DLMI was enfranchised by Lincoln Mercury as a dealer under three separate franchise agreements. During the course of operations, DLMI entered into various financing arrangements with Ford Credit including an agreement for a capitalization loan and a separate agreement for wholesale flooring for DLMI's new vehicle inventory. Daugherty executed personal guarantees for these financial commitments of DLMI.

According to DLMI, on or about December 1, 2001, as a result of the fraudulent actions of Lincoln Mercury and Ford Credit, DLMI was forced to cease its Lincoln and Mercury sales operations. Daugherty claims that DLMI relied upon the representations of Lincoln Mercury to order a number of vehicles to be built and delivered by Lincoln Mercury. Lincoln Mercury, however, contends that DLMI ordered an excess number of cars to sell and the demise of DLMI's credit line as well as the termination of the franchise was due to DLMI's conduct, not Lincoln Mercury.

////

---

[6] Background facts are derived primarily from the court's previous order.

4

On January 23, 2002, Lincoln Mercury notified DLMI that it intended to terminate DLMI's Lincoln and Mercury franchise agreements. DLMI then filed a protest with the California New Motor Vehicle Board, pursuant to the provisions of California Vehicle Code Section 3060, protesting the proposed termination of its franchises. On or about April 17, 2002, DLMI filed a separate petition with the Board, pursuant to the provisions of Section 3050(c), alleging that DLMI sustained damage as a result of the conduct of Lincoln Mercury in delivering unwanted and unordered vehicles to DLMI. The petition included claims that Lincoln Mercury was liable to DLMI on several causes of action.

The hearing on the protest and petition was scheduled to commence on January 6, 2003, before an administrative law judge ("ALJ"). The ALJ discussed the impact of the then recent opinion from the First District Court of Appeal in the matter of <u>Greenlining Institute vs. Public Utilities Commission</u>, 103 Cal.App.4th 1324 (2002). The ALJ determined that the <u>Greenlining</u> case cast serious doubt upon whether the Board had jurisdiction to consider the issues raised by the petition and granted DLMI's motion to sever the protest and petition and proceed to hearing on the protest only. The ALJ reasoned that this decision suspended the proceedings initiated by the petition "pending the outcome of whatever action Daugherty chose to pursue in civil court as to the allegations contained in the petition." NMVB Decision at 5.

////

////

**A.     THE DECISION OF THE NEW MOTOR VEHICLE BOARD**

The ALJ heard evidence on the termination protest on January 7 and 9, 2003. On April 24, 2003, the Board adopted the proposed decision of the ALJ. The specific issue pending before the Board was "whether Lincoln Mercury has good cause for the termination of Daugherty's Lincoln and Mercury Franchises." NMVB Decision at 5.[7] Pursuant to section 3066(b), Lincoln Mercury had the burden of establishing good cause for the termination of the franchise.

The ALJ made two findings of fact. First, the ALJ determined that Daugherty did in fact order the additional cars to sell (a fact DLMI contests in this litigation). Specifically, the ALJ concluded that there was no doubt that Daugherty was aware that the vehicles were being ordered to be built and delivered and that Daugherty not only desired them but required them in order to stay operational. NMVB Decision at 24. Second, the ALJ concluded that Lincoln Mercury had "established that Daugherty was not and is not conducting an adequate amount of business as compared to the business available to it." Id. at 26. The ALJ explicitly stated that "the cessation of business by Daugherty was not caused by conduct of representatives of Lincoln Mercury." Id at 27. Once the Board found that good cause had been established for the termination of the DLMI franchise, DLMI petitioned the Sacramento

---

[7] In making this determination, the ALJ considered factors such as the amount of business transacted by the franchisee, the permanency of the investment, whether it is injurious to the public for the franchise to be modified, and whether the franchisee failed to fulfill the warranty obligations, to name a few.

County Superior Court for a writ of administrative mandamus pursuant to Code of Civil Procedure Section 1094.5. This writ was denied by the Superior Court.

## II.

### DISMISSAL STANDARDS UNDER FED. R. CIV. P. 12(b)(6)

On a motion to dismiss, the allegations of the complaint must be accepted as true. See Cruz v. Beto, 405 U.S. 319, 322 (1972). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963). Thus, the plaintiff need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged. See id.; see also Wheeldin v. Wheeler, 373 U.S. 647, 648 (1963) (inferring fact from allegations of complaint).

In general, the complaint is construed favorably to the pleader. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). So construed, the court may not dismiss the complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him or her to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In spite of the deference the court is bound to pay to the plaintiff's allegations, however, it is not proper for the court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the . . .

7

laws in ways that have not been alleged." <u>Associated General Contractors of California, Inc. v. California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983).

### III.

### ANALYSIS

Daugherty and DLMI have filed an amended counterclaim and third-party complaint subsequent to the court's previous application of collateral estoppel which resulted in the dismissal of six of their claims. Although Ford Credit and Lincoln Mercury argue that Daugherty's new allegations are barred by collateral estoppel, some claims must be sustained because Daugherty and DLMI have alleged new facts which fall outside the purview of the NMVB's decision.[8]

**A.   CLAIMS ONE THROUGH SIX (AGAINST FORD CREDIT AND LINCOLN MERCURY)**

The court's October 2005 order explained that collateral estoppel applied to decisions made by administrative agencies, including the NMVB decision. October 31, 2005 Order at 8. As to the six causes of action, the court explained that each claim

---

[8] The court notes that third-party defendant Ford Credit is able to enforce the findings from the NMVB's ruling. As it points out, the California Supreme Court has held that collateral estoppel may be applied in favor of a party who was not involved in the prior action. <u>See</u> <u>Bernhad v. Bank of America</u>, 19 Cal.2d 807 (1942). Although Ford Credit was not a party in the NMVB proceedings, they were directly implicated in the NMVB's findings, and the proceedings involved the same transactions. As put by the California Supreme Court in <u>Bernhard</u>, "it would be unjust to permit one who has had his day in court to reopen identical issues by merely switching adversaries." 19 Cal.2d at 812.

8

"rel[ied] on the allegation that Lincoln Mercury and Ford Credit secretly arranged for ordering and shipping an excess number of cars and that it was those actions of Lincoln Mercury and Ford Credit that caused the DLMI franchise to fail." Id. Ford Credit and Lincoln Mercury urge the court to dismiss Daugherty's and DLMI's claims here because they contend that Daugherty and DLMI raise issues related to unordered and unwanted vehicles which the NMVB already adjudicated.

Daugherty and DLMI, on the other hand, argue that their counterclaims and third-party claims should not be dismissed because even though the Board determined that Daugherty was aware of the additional vehicles being built and delivered, the Board never made findings as to "the reason that these vehicles were ordered." Opp'n at 4. Defendants cite to various paragraphs in the fourth amended counterclaim where they allege that they ordered the vehicles because they "relied on representations" of Lincoln Mercury regarding the market share for Lincoln Mercury vehicles which were false and "in excess of the potential for sales." Opp'n at 4, citing FAC ¶¶ 54, 58, 59. Defendants' arguments are well-taken.

The court has closely examined DLMI's and Daugherty's fourth counterclaim and third-party complaint and there are new allegations relating to Lincoln Mercury's misrepresentation of the market share, which the NMVB did not consider. These allegations are contained in the general allegations and in claims two, three, and six.

9

Specifically, Daugherty and DLMI allege that:

"[R]epresentatives of Lincoln Mercury . . . made a number of representations concerning the expected sales of new Lincoln and Mercury vehicles in the Sacramento Market." See ¶ 54.

" [R]epresentations proved to be far in excess of the potential for sales of new Lincoln and Mercury vehicles in the Sacramento market." See ¶ 59.

"Lincoln Mercury "represent[ed] to DLMI the market potential for the sales of . . . vehicles . . . in an amount far in excess of the actual sales potential." See ¶ 78, second claim (breach of covenant of good faith and fair dealing)

"Lincoln Mercury deliberately misrepresent[ed] to DLMI the sales potential for Lincoln Mercury vehicles in the Sacramento area." See ¶ 86, third claim (Business & Prof Code)

"Lincoln Mercury "engaged in a course of conduct . . . designed to deceive DLMI as to the number of vehicles it could reasonably be expected to sell")6.  See ¶ 116, sixth claim (Misrepresentation/Deceit/Fraud)

Lincoln Mercury and Ford Credit point out that the NMVB considered the ordering process when they concluded that Daugherty did order the vehicles. The record reflects that the Board heard evidence suggesting that Daugherty and Lincoln Mercury representatives met and that the representatives presented sales forecasts to DLMI. Hearing Tr. at 328.[9] As Daugherty and DLMI assert, however, the Board focused on whether Lincoln Mercury had

---

[9] The transcript indicates that the sales forecasts were generated, in part, by considering Daugherty's inventory and previous sales figure. Tr. at 328:13-19. Daugherty also testified that based on these meetings, where he was present, both the dealer and manufacturer could determine the appropriate number of vehicles to be built by the manufacturer. Tr. at 328-329. The issue here, however, is estoppel, not the merits.

good cause for the termination of Daugherty's Lincoln and Mercury franchises.  NMVB Decision at 5, 27.  The Board did not consider any alleged fraud or misrepresentations concerning sales potentials which may have led Daugherty to order excess vehicles from Lincoln Mercury.  Nor did the parties tender such evidence to the Board.  As Daugherty and DLMI point out, the Board's findings were confined to "the vehicle ordering system and claims made by DLMI that Lincoln Mercury delivered vehicles that were never ordered," not whether Lincoln Mercury made representations which resulted in vehicles being ordered far in excess of the potential for sales in the Sacramento market.  Opp'n at 4-5.

Accordingly, the court sustains claims two, three, and six as to Lincoln Mercury, which contain allegations concerning false representations made by Lincoln Mercury that caused Daugherty and DLMI to order excess vehicles.[10]  Claims one, four, and five must be dismissed with prejudice because they do not contain any allegations which distinguish them from the claims which the court

---

[10] The court wishes to be clear as to why it previously dismissed the third claim brought by Daugherty and DLMI under California Business and Professions Code § 17200 in its October 31, 2005 order.  The court recognizes that the administrative law judge severed the protest of the termination of the franchise from the petition, in part because <u>Greenlining Institute v. The Public Utilities Commission of the State of California</u>, 103 Cal.App.4th 1324 (2002), called into doubt whether the Board could properly adjudicate the 17200 claim.  The court dismissed the Section 17200 claim in its previous order because that claim contained allegations only relating to whether the cessation of Daugherty's business was caused by Lincoln Mercury and Ford, an issue that was previously decided by the NMVB.  In this round of briefing, DLMI and Daugherty allege in the 17200 claim that Lincoln Mercury misrepresented the market share to them, new claims that were not before the NMVB.

11

previously dismissed. Claims one through six must be dismissed as to Ford Credit because they do not contain allegations relating to Ford Credit making any misrepresentations to Daugherty and DLMI about the market potential of the vehicles.[11]

**B.  SEVENTH CLAIM – NEGLIGENT MISREPRESENTATION (AGAINST FORD CREDIT AND LINCOLN MERCURY)**

In the previous motion for judgment on the pleadings, Lincoln Mercury did not move to dismiss this claim. In this round of briefing, both Ford Credit and Lincoln Mercury argue that this claim, too, necessarily contradicts factual findings determined by the NMVB. Their argument does not lie.

According to DLMI and Daugherty, Lincoln Mercury "represented to DLMI inflated sales forecasts" and "Ford Credit knew or should have known . . . that the representations . . . were false when made." FAC ¶¶ 127, 129. Defendants allege that these representations were made so that Lincoln Mercury could "enfranchise" another dealer to replace DLMI. Id. at ¶ 130. DLMI and Daugherty maintain that Ford Credit and Lincoln Mercury "inflat[ed] the estimates of potential sales to dealer candidates." The court must sustain the negligent misrepresentation claim because, as noted above, such allegations concerning Lincoln Mercury's representations about the market share were not issues pending before the Board.

---

[11] While DLMI and Daugherty assert in these six claims that Ford Credit illegally increased DLMI's credit line without its consent, these factual allegations are foreclosed by the NMVB's decision. See October 31, 2005 Order.

12

1  Ford Credit argues that the negligent misrepresentation claim
2 must be dismissed as to it because it did not make any
3 misrepresentations.  Mot. at 13.  This argument is unavailing.
4  First, this is a merits dispute.  Moreover, under California
5 law, misrepresentation may also include "concealment" or
6 "nondisclosure."  <u>Small v. Fritz Companies, Inc.</u>, 30 Cal.4th 167,
7 173 (2003).  Secondly, Ford Credit argues that the negligent
8 misrepresentation claim must be dismissed because, as a commercial
9 lender, it owes no fiduciary duty to Daugherty or DLMI.  It cites
10 <u>Price v. Wells Fargo Bank</u>, 213 Cal.App.3d 465, 471 (1989) for this
11 proposition.  Although the court in <u>Price</u> explained that the
12 relationship between Price and Wells Fargo Bank constituted a
13 debtor/creditor relationship and that a "debt is not a fiduciary
14 relation between debtor and creditor,"[12] that case is
15 distinguishable from the instant matter.  It is not clear that this
16 general proposition applicable between a bank and borrower/customer
17 would apply to Ford Credit.  Even assuming, without deciding, that
18 Ford Credit's flooring agreement is identical to a banker's
19 obligation to his creditor, the motion must be denied.  Even if
20 Ford Credit had no fiduciary duty to Daugherty, it had a general
21 obligation not to engage in misrepresentation, which simply arises
22 out of its business relationship.  Accordingly, the court denies

---

[12]  <u>See</u> <u>also</u> <u>Lawrence v. Bank of America</u> 163 Cal.App.3d  431, 437 (1985) (where a bank customer alleged his bank owed him a fiduciary duty, "under ordinary circumstances the relationship between a bank and its depositor is that of debtor-creditor, and is not a fiduciary one").

13

1 Ford Credit's and Lincoln Mercury's motion to dismiss as to this
2 claim.

**C.  EIGHTH AND NINTH CLAIMS (FRAUD AS A RELEASE FROM GUARANTY AGAINST FORD CREDIT AND VIOLATION OF CONTINUING GUARANTEES)(Against Ford Credit)**

In their fourth amended counterclaim and third-party complaint, Daugherty and DLMI allege these two new causes of action.  Defendants seek declaratory relief releasing them from Ford Credit's Wholesale Guaranty and Promissory Guaranty, because they allege that they have been defrauded.

Daugherty alleges that he executed a Wholesale Guaranty and Promissory Guaranty with Ford Credit which "ma[d]e Daugherty personally responsible for certain indebtedness allegedly owed by DLMI to Ford Credit." Id.  DLMI and Daugherty contend that the alleged indebtedness of DLMI was "generated by and through a common scheme to raise DLMI's flooring line with Ford Credit, and to have Lincoln Mercury build and deliver vehicles against this increased flooring line, even after the credit had been suspended." Id. at 23.  These two causes of action redescribe a "common scheme" wherein Ford Credit allegedly acted illegally to "raise DLMI's flooring line credit without DLMI's consent or knowledge."  The "fraud" alleged in these two claims relate not to alleged misrepresentations of the market share made by Lincoln Mercury, but about the ordering process of the vehicles that the Board previously addressed.  The court must dismiss these two causes of action with prejudice because they are a clear attempt to repackage claims that "Lincoln Mercury and Ford Credit secretly arranged for

14

1 ordering and shipping an excess number of cars" and that such
2 actions "caused the DLMI franchise to fail."  Significantly, the
3 NMVB previously found not credible Daugherty's denial that he did
4 not request an increase from Ford Motor Credit in his flooring
5 line.  See NMVB Decision at 19.  Rather, the Board explicitly found
6 that Daugherty was "aware that [his credit line] was being
7 increased due to the shipment of vehicles which were being received
8 and billed to Daugherty's account by Ford Motor Credit" Id. at 19-
9 20.

10     Finally, as the court explained in its October order,
11 allegations relating to a "common scheme" between Ford Credit and
12 Lincoln Mercury to defraud defendants implicate and contradict the
13 facts determined by the NMVB.  October 31, 2005 Order at 10-11.
14 Although the scheme is restated within the context of a new legal
15 theory, defendants are collaterally barred from asserting them.
16 See Sutphin v. Speik, 99 P.2d 652, 656 (1940) (collateral estoppal
17 is a bar to a party presenting a new thory with respect to the same
18 issue previously litigated).  These two claims alleging fraud with
19 respect to the guarantees between Ford Credit and defendants are
20 dismissed with prejudice.

21 **D.   TWELFTH COUNTERCLAIM – VIOLATION OF CALIFORNIA CIVIL CODE
       SECTION 2819 (Against Ford Credit)**
22

23     California Civil Code § 2819 states in pertinent part:
24     A surety is exonerated, except so far as he or she may
   be indemnified by the principal, if by any act of the
25 creditor, without the consent of the surety the original
   obligation of the principal is altered in any respect,
26 or the remedies or rights of the creditor against the

15

principal, in respect thereto, in any way impaired or suspended.

In their twelfth counterclaim, defendants allege that they are no longer liable under their continuing guarantees because Ford Credit "unilaterally, and in violation of the terms of the finance agreement with DLMI, raised the maximum credit limit available to DLMI, and financed vehicles which were delivered to DLMI with this additional and unauthorized extension of credit." FAC ¶ 147. The counterclaim alleges that Ford Credit was required to "amend" the "finance agreement with DLMI," and to have such agreement "signed by both parties." Id. at ¶ 149.

This claim cannot stand because it contradicts the findings of the NMVB, which found that Daugherty ordered the vehicles and that the credit line was increased with his consent. According to the NMVB decision:

> The claim that there was "no viable funding source" at the time [the vehicles] were delivered is not tenable . . . . Although Mr. Daugherty denies that he requested an increase from Ford Motor Credit in Daugherty's flooring line, he was aware that it was being increased due to the vehicles which were being received and billed to Daugherty's account by Ford Motor Credit.

NMVB Decision at ¶¶ 74-75.

The Board went on to say that:

> There is no doubt that Daugherty was aware that these vehicles were being ordered to be built and delivered . . . Daugherty was also aware that they and been financed through Ford Motor Credit as Daugherty received itemized flooring statements showing the deliveries.

NMVB Decision at ¶ 91.

16

The Board has already adjudicated this issue and found that Daugherty was aware and most likely consented to the credit increase. The Board explicitly considered and rejected Daughtery's contention that he did not request an increase from Ford Credit. Defendants are collaterally barred from raising this claim now.

Finally, it is worth nothing that under California law, the Board's findings would preclude defendant from bringing this claim. The California Supreme Court has explained that the logical corollary to Section 2819 is that "where the surety consents to an alteration of the original obligation of the principal, or the impairment or suspension of any of the creditor's rights or remedies against the principal, the surety is not exonerated." Bloom v. Bender, 48 Cal.2d 793, 800 (1957). The Board's factual findings make clear that Daugherty knew of, and consented to, the increase in the credit line by Ford Credit, and thus defendants may not be exonerated from his obligations under the guaranty agreements. Defendants' twelfth claim must be dismissed.

## IV.

## CONCLUSION

Ford Credit's and Lincoln Mercury's motions to dismiss are GRANTED in part, and DENIED in part, as follows:

1. Lincoln Mercury's motion to dismiss as to claims one, four, and five is GRANTED;

////

////

////

17

2. Ford Credit's motion to dismiss as to claims one through six, eight, nine, and twelve is GRANTED.[13]

3. In all other respects, the motions are DENIED.

IT IS SO ORDERED.

DATED: February 21, 2006.

/s/Lawrence K. Karlton
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[13] The court dismisses these claims with prejudice. In doing so, the court recognizes that the standard for granting leave to amend is generous. In <u>Scott v. Eversole Mortuary</u>, 522 F.2d 1110 (9th Cir. 1975), the Ninth Circuit reversed the district court's dismissal of plaintiff's count insofar as it denied leave to amend because the court could "conceive of facts" that would render plaintiff's claim viable and could "discern from the record no reason why leave to amend should be denied." Similarly, in <u>Breier v. Northern California Bowling Proprietors' Ass'n</u>, 316 F.2d 787, 789-90 (9th Cir.1963), the court held that leave to amend should be granted if underlying facts provide proper grounds for relief or if the complaint can be saved by amendment. "[L]eave to amend should be granted 'if it appears at all possible that the plaintiff can correct the defect.'" <u>Id.</u> at 790 (quoting 3 James Wm. Moore, et al., <u>Moore's Federal Practice</u> § 15.10 at 838 (2d ed. 1948)). In the case at bar, however, the court has been more than generous in allowing DLMI and Daugherty to amend twice before. The court is confident in concluding that DLMI and Daugherty have been given ample opportunities to save any claims for which underlying facts allow proper grounds for relief.

18